UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADRIANO SICA ) | Case Number |
| Plaintiff ) | |
| v. ) | CIVIL COMPLAINT |
| HARRISON ROSS BYCK, ESQ., P.C. ) | JURY TRIAL DEMANDED |
| Defendant ) | |

## COMPLAINT AND JURY DEMAND

**COMES NOW**, Plaintiff, Adriano Sica, by and through his undersigned counsel, Brent F. Vullings, Esquire of Warren & Vullings, LLP, complaining of Defendant, and respectfully avers as follows:

### I. INTRODUCTORY STATEMENT

1. Plaintiff, Adriano Sica, is an adult natural person and brings this action for actual and statutory damages and other relief against Defendant for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices and the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.4 ("PFCEUA) and the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1-201-9.3 ("UTPCPL") which also prohibit debt collectors and original creditors from engaging in abusive, deceptive and unfair practices.

## II. JURISDICTION

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1337.

3. Venue in this District is proper in that the Defendant has a location in this district.

## III. PARTIES

4. Plaintiff, Adriano Sica is an adult natural person residing at 203 Katie Lane, Quarryville, Pennsylvania 17566. At all times material and relevant hereto, Plaintiff is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a (2).

5. Defendant, Law Office of Harrison Ross Byck, P.C. ("Defendant"), at all times relevant hereto, is and was a professional corporation engaged in the business of collecting debt within the Commonwealth of Pennsylvania with its principal place of business located at 1276 Veterans Highway, Suite E-1, Bristol, PA 19007.

6. Defendant is engaged in the collection of debts from consumers using the telephone and mail. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

## IV. FACTUAL ALLEGATIONS

7. In or about August 2010, Plaintiff received a letter in the mail from the Defendant regarding an alleged debt owed to Providian Bank.

8. Plaintiff called the Defendant and spoke with Defendant's agent.

9. Defendant's agent told the Plaintiff to make payment arrangements.

10. Defendant's agent told the Plaintiff if payment arrangements were not made the Defendant would seize the Plaintiff's house and personal property.

11. Defendant's agent also told the Plaintiff if personal property was not available for seizure the Plaintiff could go to jail.

12. Plaintiff offered to make payments of $50.00 a month.

13. Defendant's agent said the lowest payment the Plaintiff could make was $200.00 per month.

14. In or about early 2011, Plaintiff began making payments of $200 to the defendant via automatic withdraws.

15. During the payment process Plaintiff had trouble gathering the money for a scheduled payment.

16. Plaintiff called and asked Defendant's agent if the payment could be postponed for one week.

17. Defendant's agent thanked the Plaintiff for calling rather than just not making a payment.

18. Defendant's agent agreed to withdraw the money from the Plaintiff the following week.

19. Plaintiff continued making payments to the Defendant for $200.00 a month.

20. Plaintiff again in the first half of 2011 had trouble gathering the money to make a $200.00 payment.

21. Plaintiff called and asked Defendant's agent to wait until one additional day to have the money withdrawn from Plaintiff's bank account.

22. Defendant's agent became irate upon hearing the request.

23. Defendant's agent told Plaintiff, "you can't do this every other month, I have been trying to help you but you don't want to go by the rules. If you don't have a job that is not my problem".

24. Plaintiff explained to the Defendant's agent the money would be available the next day after his deposited funds cleared.

25. Defendant's agent told the Plaintiff it was his choice not to work and it wasn't the Defendant's agent problem.

26. The following day the Defendant's agent called the Plaintiff's house but the Plaintiff was unable to answer the phone.

27. The Plaintiff called the Defendant's agent back within a few minutes of missing the call.

28. The Defendant's agent asked the Plaintiff why he did not answer the phone when the Defendant's agent called.

29. The Plaintiff explained to the Defendant's agent that the Plaintiff was making dinner for his children.

30. The Defendant's agent told the Plaintiff when Defendant's agent call the Plaintiff's children can wait.

31. A few days later the Defendant's agent called the Plaintiff again.

32. During this conversation the Defendant's agent told the Plaintiff, "stop playing word games with me, I know your kind and if you choose to let your wife work and you sponge off her that isn't my concern. If she is that big of a fool go ahead and go for it, it sounds to me like you would rather her wear the pants in the family".

33. Plaintiff decided to call the Defendant's agent's supervisor and was connected to "John Baker".

34. Defendant's agent, "John Baker", was rude and would not allow the Plaintiff to speak.

35. Defendant's agent, "John Baker", told the Plaintiff multiple times that if the alleged debt was not paid off the Plaintiff would lose his property.

36. The Plaintiff explained to Defendant's agent, "John Baker", that he was attempting to pay the debt but could not afford the amount set by the Defendant's Agent.

37. Defendant's agent, "John Baker", told the Plaintiff it should have been the Plaintiff's decision on how much he could afford each month.

38. Plaintiff and Defendant's agent, "John Baker", made a new payment arrangement of $50.00 a month to pay the alleged debt.

39. Plaintiff asked the Defendant's agent, "John Baker", if Plaintiff could send a check to make payments.

40. Defendant's agent, "John Baker", told Plaintiff the only way to make payments with their company was through automatic withdraws.

41. In or about May 2011, Plaintiff made the first payment of $50.00 via automatic withdraw and received a confirmation letter.

42. The confirmation letter stated payments could now be made through the Defendant's website.

43. In or about June 2011, Plaintiff made his second payment of $50.00, this time via Defendant's website.

44. In or about July 2011, Plaintiff made another payment of $50.00 via the Defendant's website.

45. In or about August 2011, Plaintiff realized his bank account had a negative balance.

46. The Defendant had attempted to withdraw money without consent in June 2011 and July 2011 from Plaintiffs bank account knowing they were unauthorized to do so and despite the fact the Plaintiff had paid the monthly amount for June and July.

47. In or about September 2011, Plaintiff attempted to make a payment of $50.00 via Defendant's website but the website would not allow the Plaintiff to log-in.

48. On or about September 6, 2011, Plaintiff called the Defendant's agent about not being able to log-in to the website to make a payment.

49. The Defendant's agent, "John Baker", began yelling at the Plaintiff stating the Plaintiff has three months of "bounced" payments.

50. Plaintiff explained to Defendant's agent, "John Baker", he had paid the balance on-line and had the transaction and confirmation numbers.

51. Defendant's agent, "John Baker", refused to listen to the Plaintiff and continued to berate and humiliate Plaintiff about the missed payments.

52. Defendant's agent, "John Baker", told the Plaintiff to pay the bill in full or the Sheriff's Office would be sent to the Plaintiff's house to take what was in it.

53. The Defendant knew or should have known that their actions violated the FDCPA. Additionally, Defendant could have taken the steps necessary to bring their and their agent's actions within compliance of the FDCPA, but neglected to do so and failed to adequately review those actions to insure compliance with the law.

54. At all times pertinent hereto, Defendant was acting by and through it agents, servants and/or employees, who were acting with the scope and course of their employment and under the direct supervision and control of Defendant herein.

55. At all times pertinent hereto, the conduct of Defendant as well as its agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for federal and state law and the rights of the Plaintiff herein.

56. As a result of Defendant's conduct, Plaintiff has sustained actual damages, including, but not limited to, injury to Plaintiff's reputation, invasion of privacy, damage to Plaintiff's credit, out-of-pocket expenses, physical, emotional and mental pain and anguish and pecuniary loss and she will continue to suffer same for an indefinite time in the future, all to his great detriment and loss.

## COUNT I – FDCPA

57. The above paragraphs are hereby incorporated herein by reference.

58. At all times relevant hereto, Defendant was attempting to collect an alleged debt which was incurred by Plaintiff for personal, family or household purposes and is a "debt" as defined by 15 U.S.C. § 1692a(5).

59. The foregoing acts and omissions constitute violations of the FDCPA, including but not limited to, violations of:

| | |
|---|---|
| § 1692d: | Any conduct the natural consequence of which is to harass, oppress, or abuse any person |
| § 1692e: | Any other false, deceptive, or misleading representation or means in connection with the debt collection |

| | |
|---|---|
| § 1692e(4): | Nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment |
| § 1692e(5): | Threaten to take any action that cannot legally be taken or that is not intended to be taken |
| § 1692e(10): | Any false representation or deceptive means to collect a debt or obtain information about a consumer |
| § 1692f: | Any unfair or unconscionable means to collect or attempt to collect the alleged debt |
| § 1692f(5): | Caused charges to be made to the consumer |

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against the Defendant, United Recovery Systems, LP for the following:

a. Actual damages;

b. Statutory damages pursuant to 15 U.S.C. § 1692k;

c. Reasonable attorney's fees and litigation expenses, plus costs of suit; and

d. Such additional and further relief as may be appropriate or that the interests of justice require.

## COUNT II
### VIOLATIONS OF PENNSYLVANIA FAIR CREDIT EXTENSION UNIFORMITY ACT
**(FCEUA, 73 Pa. C.S. § 2270.1 et seq.)**

36. Plaintiff repeat, re-allege and incorporate by reference the foregoing paragraphs.

37. The collection of a debt in Pennsylvania is proscribed by the Fair Credit Extension Uniformity Act at 73 Pa. C.S. § 2270.1 et seq., ("FCEUA") and the Pennsylvania

Unfair Trade Practices and Consumer Protection Law 73 Pa. C.S 201-1 et seq. ("UTPCPL"). Defendant is a debt collector pursuant to 73 Pa. C.S. § 2270.3.

38. The alleged debt Defendant was attempting to collect is a debt as defined by 73 Pa. C.S. § 2270.3.

39. The FCEUA proscribes, inter alia, engaging in any false, misleading or deceptive representations when attempting to collect a consumer debt.

40. The actions of Defendant, as aforesaid, constitute false, misleading or deceptive representations.

41. Violations of the FDCPA is a per se violation of the FCEUA and the UTPCPL.

42. As a direct and proximate result of the said actions, Plaintiff has suffered financial harm.

43. By virtue of the violations of the law as aforesaid, and pursuant to the FCEUA and UTPCPL, Plaintiff is entitled to an award of actual damages, treble damages, attorney's fee and costs of suit.

**WHEREFORE**, Plaintiff prays this Honorable Court enter judgment in their favor and against Defendant, and Order the following relief:

  a. Actual damages;

  b. Treble damages;

  c. An award of reasonable attorneys fees and expenses and costs of court; and

  d. Such additional relief as is deemed just and proper, or that the interests of justice require.

## COUNT II

### VIOLATIONS OF PENNSYLVANIA CONSUMER PROTECTION LAW
### ("UTPCPL"), 73 Pa. C.S. § 201-1 et seq.

44. The foregoing paragraphs are incorporated herein by reference.

45. Plaintiff and Defendants are "Persons" to 73 Pa. C.S § 201-2.

46. The UTPCPL proscribes, inter alia, engaging in any "unfair or deceptive acts or practices", either at, and prior to or subsequent to a consumer transaction.

47. The action of Defendant, as aforesaid, constitutes unfair acts or practices under the UTPCPL, by way of the following, inter alia:

   a. Defendant, misrepresented to Plaintiff the character, extent or amount of the debt or its status in a legal proceeding, 73 Pa. C.S. § 201-3.1;

   b. Defendant, engaged in deceptive or fraudulent conduct which created a likelihood of confusion or of misunderstanding, 73 Pa. C.S. § 201-2(xxi);

   c. Defendant, failed to comply with the FDCPA and FCEUA which are per se violations of the UTPCPL.

48. As a direct and proximate result of the said actions, Plaintiff has suffered financial damages and other harm.

49. By virtue of the violations of law aforesaid and pursuant to the UTPCPL, Plaintiff is entitled to an award of actual damages, treble damages, attorney's fees and costs of suit.

**WHEREFORE** Plaintiff prays this Honorable Court enter judgment in their favor and against Defendant, and Order the following relief:

   a. An Order declaring that Defendants violated the UTPCPL;

b. Actual damages;

c. Treble damages;

d. An award of reasonable attorney's fees and expenses and cost of suit; and

e. Such additional relief as is deemed just and proper, or that the interest of justice may require.

## V. JURY DEMAND

Plaintiff hereby demands a jury trial as to all issues herein.

**Respectfully submitted,**

**WARREN & VULLINGS, LLP**

**Date: October 18, 2011**

BY: */s/Brent F. Vullings*
Brent F. Vullings, Esquire
Warren & Vullings, LLP
93 Old York Road
Suite 333
Jenkintown, PA  19046
215-745-9800   Fax 215-745-7880
Attorneys for Plaintiff